# United States District Court

**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| AUTOMOTIVE BODY PARTS | § | |
| ASSOCIATION | § | |
| | § | |
| V. | § | CASE NO. 4:13-CV-705 |
| | § | Judge Mazzant |
| FORD GLOBAL TECHNOLOGIES, LLC | § | |

## MEMORANDUM OPINION AND ORDER[1]

Pending before the Court is Defendant Ford Global Technologies, LLC's Motion to Transfer Venue to the Eastern District of Michigan (Dkt. #37). After considering the motion, the responses, and the relevant pleadings, the Court finds the motion is granted.

## BACKGROUND

The Automotive Body Parts Association ("ABPA") filed the present suit for declaratory judgment asserting originally that six design patents on automotive body repair parts owned by Ford Global Technologies, LLC ("Ford") are "invalid and/or unenforceable under the doctrines of patent exhaustion and/or functionality and are not infringed by ABPA members" (Dkt. #1 at 3, ¶ 11). In its response to the motion to transfer, however, the ABPA indicated that it dropped three patents from this litigation without prejudice, and that the following three patents remain: D489299 (F-150 Exterior of Vehicle Hood); D496890 (F-150 Vehicle Grill); and D501685 (F-150 Vehicle Head Lamp) (Dkt. #41 at 1). After reviewing the amended complaint filed on October 3, 2014, by the ABPA, it appears that there are now only two remaining patents in this litigation: D489299 (F-150 Exterior of Vehicle Hood); and D501685 (F-150 Vehicle Head Lamp) (*See* Dkt. #48).

---

[1] On November 7, 2014, the undersigned entered a report and recommendation in this case as the United States Magistrate Judge to whom this case was referred. This case is now assigned to the undersigned as the presiding United States District Judge, and this memorandum opinion and order is issued accordingly.

On August 13, 2014, Ford filed its motion to transfer to the Eastern District of Michigan (Dkt. #37).  On September 2, 2014, the ABPA filed its response (Dkt. #41).  On September 12, 2014, Ford filed its reply (Dkt. #43).  On September 22, 2014, the ABPA filed its sur-reply (Dkt. #47).

## LEGAL STANDARD

Ford moves to transfer venue to the Eastern District of Michigan pursuant to 28 U.S.C. § 1404(a), which permits a district court to transfer any civil case "[f]or the convenience of parties and witnesses, in the interest of justice...to any other district or division where it might have been brought.**"** 28 U.S.C. § 1404(a).  "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).  The purpose of 28 U.S.C. § 1404(a) "is to prevent the waste 'of time, energy and money' and 'to protect the litigants, witnesses and the public against unnecessary inconvenience and expense…'" *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964).  As transfer of venue is not a matter of substantive patent law, case law from the Court of Appeals for the Fifth Circuit governs this motion.  *See In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008).

The threshold inquiry when determining eligibility for transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed," or whether all parties have consented to a particular jurisdiction.  *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("Volkswagen I").  Once that threshold inquiry is met, the Fifth Circuit has held that "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus.,*

*Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004).  The private interest factors include (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.  *In re Volkswagen of America, Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) ("Volkswagen II").  The public interest factors include (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law.  *Id*.  These factors are not exhaustive or exclusive, and no single factor is dispositive.  *Id*.

The party seeking transfer of venue must show good cause for the transfer.  *Volkswagen II*, 545 F.3d at 315.  The moving party must show that the transferee venue is "clearly more convenient" than the transferor venue.  *Volkswagen II*, 545 F.3d at 315.  The plaintiff's choice of venue is not a factor in this analysis, but rather contributes to the defendant's burden to show good cause for the transfer.  *Volkswagen II*, 545 F.3d at 313 & 314 n.10 ("[W]hile a plaintiff has the privilege of filing his claims in any judicial division appropriate under the general venue statute, § 1404(a) tempers the effects of the exercise of this privilege.").  However, "when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected."  *Id*. at 315.

## ANALYSIS

The first issue that the Court must determine is whether the suit could have been filed originally in the destination venue.  *Volkswagen II*, 545 F.3d at 312.  The ABPA does not dispute

that the Eastern District of Michigan is a proper venue for this case.  As this matter is not in dispute, Ford meets the threshold inquiry for a transfer of venue analysis.

Both parties address the weight that should be given to the ABPA's choice of the Eastern District of Texas as the forum that should resolve this dispute.  However, Fifth Circuit law is clear that the plaintiff's choice of venue is not a factor in this analysis, but rather contributes to the defendant's burden to show good cause for the transfer.  *Volkswagen II*, 545 F.3d at 313 & 314 n.10 ("[W]hile a plaintiff has the privilege of filing his claims in any judicial division appropriate under the general venue statute, § 1404(a) tempers the effects of the exercise of this privilege.").  Thus, the Court will consider the ABPA's choice of the Eastern District of Texas in its consideration of Ford's burden to show that the Eastern District of Michigan is "clearly more convenient" than this district.

Ford argues that the ABPA brought the current suit against Ford, claiming its authority from a prior correspondence between Ford and New World International ("New World"), which resulted in assurances from New World that it would honor the design patents at issue.  Ford asserts that the limited discovery thus far has revealed that New World had no intention of keeping its promise, and instead "colluded" with the ABPA to bring the present suit while representing to Ford that there was no justiciable controversy.  Ford argues that filing an anticipatory declaratory judgment action is grounds for dismissal of an action, but at the very least should justify a transfer to the Eastern District of Michigan.  The ABPA contends that this is an improper attempt to reargue declaratory judgment standing.

Although the venue factors set out by the Fifth Circuit are non-exclusive, the Court declines to consider this as a separate factor in its transfer analysis.  The Court has already addressed the standing issues at length, and has asserted that it will reconsider the issues if

necessary in a subsequent motion.  Further, the issue here is not whether dismissal is appropriate, but rather if Ford has met its burden to demonstrate whether the Eastern District of Michigan is a "clearly more convenient" forum that the present judicial district.  The Court will now turn to that analysis.

## A.    Public Interest Factors

The Fifth Circuit applies four non-exclusive public interest factors in determining a § 1404(a) venue transfer question – (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflicts of law or the application of foreign law.

### 1. The administrative difficulties flowing from court congestion

In considering this factor, the speed with which a case can come to trial and be resolved may be a factor.  *In re Genentech, Inc.*, 566 F.3d 1338, 1347 (Fed. Cir. 2009) (citing *Gates Learjet Corp v. Jenson*, 743 F.2d 1325, 1337 (9th Cir. 1984) ("[T]he real issue is not whether [transfer] will reduce a court's congestion but whether a trial may be speedier in another court because of its less crowded docket.")).  The Federal Circuit has noted that this factor appears to be the most speculative, and case-disposition statistics may not always tell the whole story.  *Id*.

The most recent statistics obtained by this Court for the 12-month period ending in June 30, 2014, indicate that the median time from filing to trial in civil cases in the Eastern District of Texas was 27.9 months, as compared to 28.4 months in the Eastern District of Michigan.[2]  The median time from filing to disposition in the Eastern District of Texas was 9.0 months and 8.5

---

[2] *See* Federal Court Management Statistics, June 2014,
 www.uscourts.gov/Statistics/FederalCourtManagementStatistics/district-courts-june-2014.aspx,   accessed   October 20, 2014.

months in the Eastern District of Michigan.  There is little difference in the median amount of time in which this case can come to trial and/or be resolved in either district.

Ford contends that resolution would be more efficient in the Eastern District of Michigan based on several of the other interest factors.  The ABPA expresses a concern that in the Eastern District of Michigan, 8.7% of civil cases that are pending are over three years old, as compared to 5.4% of civil cases in the Eastern District of Texas.  In addition, the ABPA notes that the Eastern District of Texas has patent rules and procedures for efficient processing of patent cases, and the Eastern District of Michigan does not, which may contribute to the ability of the Eastern District of Texas to resolve patent cases quickly.  However, the issues in this case relate to claims that arise under the federal patent law, "for which there is uniformity nationwide," and both courts are equally equipped to address.  *See In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1224 (Fed. Cir. 2011).  Further, there are many reasons why cases may remain pending for three years or more, which may or may not have to do with the congestion of the court itself as much as the individual requirements of the litigation and the unique needs of a case.  Because there is little difference in the median time to trial in the Eastern District of Michigan from the present venue, the Court finds this factor is neutral.

     *2. The local interest in having localized interests decided at home*

The second public interest factor is the local interest in having localized interests decided at home.  *Volkswagen II*, 545 F.3d at 315.  "Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation."  *Affinity Labs of Texas v. Samsung Electronics Co., Ltd.*, 968 F. Supp. 2d 852, 855 (E.D. Tex. 2013) (citing *Volkswagen I*, 371 F.3d at 206)).  The mere sale of "several" or "some" of the allegedly infringing products in a given district is not enough to shift this factor in favor of one party.  *See In re TS Tech USA*

*Corp*, 551 F.3d 1315, 1321 (Fed. Cir. 2008).  The ABPA's argues that Ford sells more F Series trucks in Texas than in any other state; therefore, by implication, this judicial district has a localized interest in keeping repair parts for the F-150 truck available and affordable.  However, the sale of Ford products in this district alone is not enough to shift this factor against transfer.

The ABPA is a Texas corporation with is principal and registered office and address in Houston, Texas, which is not in this judicial district (Dkt. #41 at 13 & Ex. 3 ¶¶ 10, 13).  The headquarters of the ABPA are currently in Rhode Island, where the current executive director lives and maintains a home office.  *Id.* at ¶ 13.  The ABPA's officers and board members live throughout the United States, with two living near, but not in, this district.  *Id.* at ¶¶ 2, 3.  The ABPA also asserts that some proof will be required from New World, which is a member of the ABPA, and located in Irving, Texas, also not in this judicial district (Dkt. #41 at 3, Ex. 1 ¶ 3).  The ABPA asserts that because New World is primarily a regional seller of automotive parts, it is likely that discovery will reveal that some of the automotive repair companies that received the accused parts and installed them on the vehicles are located in this district, and that the owner of the cars that were repaired live and purchased their vehicles in the Eastern District of Texas.

The only patent doctrines at issue in this litigation are the doctrines of invalidity based on functionality and patent exhaustion.  This litigation is somewhat unique in that the ABPA is asserting associational standing to sue on behalf of its members, and it plans to use individualized proof from New World when necessary to establish certain factors.  Infringement is not an issue in this case.  Ford asserts that the Eastern District of Michigan has a greater local interest in this litigation because at the heart of this litigation is the design, advertising, and marketing of the two patents-in-suit.  The two patents were both researched and designed, and decisions regarding advertising and marketing were made in the Eastern District of Michigan.

The ABPA essentially argues that the design of the patents has nothing to do with the issues before the Court, and states that the most relevant evidence regarding sales and design of the accused products will come from New World, located in the Northern District of Texas.

The decision before the Court is whether the Eastern District of Texas (not the Northern District of Texas) or the Eastern District of Michigan has the greatest local interest in deciding this case.  It is clear to this Court that the research, design, advertising decisions, and marketing decisions all occurred in the Eastern District of Michigan, giving that district the greatest local interest in deciding this dispute.  The Eastern District of Texas lacks any meaningful connection to this litigation.  This factor favors transfer.

### 3. *The familiarity of the forum with the law that will govern the case*

The parties do not dispute that both courts are familiar with the relevant law.  The ABPA briefly asserts that the Eastern District of Texas is uniquely qualified to handle patent litigation, and has been one of the top two judicial districts in the country in terms of percentage of civil cases filed that are patent cases and average patent cases per active judge.  While this may be true, this case arises under federal patent law, with which both districts are equally familiar and able to apply appropriately.  The Court finds that this factor is neutral.

### 4. *The avoidance of unnecessary problems in conflict of laws*

As this is a patent case arising under federal law, there are no issues relating to conflict of laws.  The court agrees with the parties that this factor is neutral.

## B.  The Private Interest Factors

The Fifth Circuit also considers four non-exclusive "private" factors – (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of willing witnesses; (3) the cost of attendance for willing witnesses; and (4) all other

practical problems that make a trial easy, expeditious, and inexpensive.  *Volkswagen II*, 545 F.3d at 315.

     *1.  The relative ease of access to sources of proof*

     The first private interest factor is the relative ease of access to the sources of proof. *Volkswagen I*, 371 F.3d at 203.  "The Fifth Circuit has cautioned this factor remains relevant despite technological advances having made electronic document production commonplace." *DataQuill, Ltd. v. Apple Inc.*, No. A-13-CA-706-SS, 2014 WL 2722201, at *3 (W.D. Tex. June 13, 2014) (citing *Volkswagen II*, 545 F.3d at 316)).  "The Federal Circuit has observed that '[i]n patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer,' and therefore the location of the defendant's documents tends to be the more convenient venue.'"  *Id.* (citing *Genentech*, 566 F.3d at 1345).  However, in this case infringement is not at issue, as noted by both parties, as the ABPA has essentially conceded the issue of infringement and does not bring an infringement claim.  Thus, the Court will consider the location of the relevant documents at issue.

     Ford contends that the design documents are central to the issues here, and "all of Ford's documents relating to design, development, marketing, advertising, research and sales of the relevant products are maintained in the Eastern District of Michigan."  (Dkt. #37 at 8). Specifically, Ford states that to establish the design for each of the F-150 parts, a team of at least five Ford designers worked for two years to craft the precise shape, contour, angles, and dimensions of each individual part.  *Id.* at Ex.1 ¶ 7.  The process includes hand sketches, computer aided drafting, computer modeling, clay modeling, and prototype parts.  *Id.* at ¶ 8. Further, the marketing and advertising decisions and market research was conducted by employees in Dearborn, Michigan.  *Id.* at ¶ 13.  Also in Michigan are employees that work on

replacement parts and the patent prosecution of these patents, along with their accompanying documents. *Id*.

There are no sources of proof in the Eastern District of Texas. The ABPA asserts that the relevant tangible things are located in the Northern District of Texas, at New World in Irving, Texas (Dkt. #41 at 3). These items include the accused automotive repair parts and certain "performance parts" that may be relevant to the issue of functionality. *Id*. The ABPA also argues that most of the relevant documents in this case come from New World, and include letters that establish a justiciable controversy, documents regarding accused products, and documents evidencing a rise in the prices of parts related to Ford's design patents. *Id*. at 4.

The Court agrees with Ford that the bulk of the relevant evidence regarding the creation of the design and the patents is in Michigan. This non-electronic evidence of models and physical products are material evidence in Ford's defense of the ABPA's assertion of functionality, which is based on the designs created in Michigan. Further, there are absolutely no documents or other physical evidence located in the Eastern District of Texas. This factor favors transfer.

### 2. *The availability of compulsory process to secure the attendance of witnesses*

The second private interest factor is the availability of compulsory process to secure the attendance of witnesses. *Volkswagen I*, 371 F.3d at 203. A court cannot compel nonparty witnesses to travel more than 100 miles, unless it is within the same state and will not cause the witnesses to incur substantial travel expenses. FED. R. CIV. P. 45(c)(3)(A)(ii), 45(c)(3)(B)(iii). Both parties allege a substantial number of nonparty witnesses and each party claims that its favored venue has subpoena power over a greater number of these witnesses.

Ford argues that its employees, as well as the employees of Ford Motor Company (which is not a party to this suit), are within the subpoena power of the Eastern District of Michigan, including the Ford employees and former employees that participated in the design and marketing of the F-150 parts, as well as the prosecuting attorneys (Dkt. #37 at 10).   Ford specifically lists five party witnesses, and three nonparty witnesses within the subpoena power of the Eastern District of Michigan.   The ABPA lists primarily nonparty witnesses from New World, which is technically not a party, but is integrally involved in this litigation.   The ABPA lists five nonparty witnesses located in the Eastern District of Texas, and eleven other nonparty witnesses within the subpoena power of this Court.   A transfer of venue analysis does not require that parties show with any degree of specificity the information of a potential witness, but rather only an allegation that the witness has relevant or important information.   *Genentech*, 566 F.3d at 1343-44.   Both parties have identified several witnesses with potentially relevant information within the subpoena power of their chosen venue, and it appears that slightly more are within the subpoena power of this Court.   Thus, this factor weighs slightly against transfer.

   *3. The cost of attendance for willing witnesses*

The third private interest factor is the cost of attendance for willing witnesses. *Volkswagen I*, 371 F.3d at 203.   In *Volkswagen II*, the Fifth Circuit noted that "[a]dditional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time in which these fact witnesses must be away from their regular employment." *Volkswagen II*, 545 F.3d at 317.   The Fifth Circuit established the "100-mile" rule to determine the convenience of the transferee district to the witnesses and parties.   "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of the

convenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 204-05.  The "100-mile" rule applies because the Eastern District of Michigan is approximately 1,300 miles from Sherman, Texas.  *See id*.  When inconvenience would exist in either potential venue, merely shifting inconvenience from one party's witnesses to the other is insufficient to affect a transfer of venue analysis.  *In re Google Inc.*, 412 F. App'x 295, 296 (Fed. Cir. 2011).

Ford argues that its willing witnesses would incur substantial expense from traveling and would disrupt Ford's ordinary business, which is a concern not shared by the ABPA.  The ABPA argues that it has more nonparty witnesses that would be affected by the expense incurred from traveling than Ford.  The ABPA asserts that because the nonparty portion of this factor strongly weighs against transfer and the party portion is neutral, this factor weighs against transfer.

For purposes of this venue analysis, the Court will assume that the witnesses employed by Ford and Ford Motor Company are willing witnesses, as are the employees of New World and other members of the ABPA who are participants in this litigation.  Each party argues that its witnesses would be greatly inconvenienced by the other party's chosen venue.  However, Ford does argue, and this Court agrees, that requiring its witnesses to travel a great distance would disrupt its business.  The ABPA does not share this concern, as it is an association composed of members, including New World, and it does not make, manufacture, or sell any products.  This factor weighs only slightly in favor of transfer.

*4. All other practical problems that make trial easy, expeditious, and inexpensive*

Ford contends that because this case is in its early stages, no practicable problems exist that would deter this Court from transferring this litigation.  The ABPA contends that Ford delayed in filing its motion to transfer, and as a result this Court has already considered the

12

issues of associational standing and motions to quash depositions, and judicial economy will have been wasted by a transfer.  The Court disagrees.  While this Court has already considered the issues of associational standing, that issue is still open to be reconsidered by further briefing and could easily be handled by the Eastern District of Michigan at a later stage of litigation. Further, discovery has commenced in this case, but could easily be continued in a different forum.  No claim construction order has been entered in the present case, and the parties agree that no claim construction is necessary or that a claim construction order in this case can be limited to the claim language and the drawings in the patents-in-suit.  The parties further agree that many of the remaining issues are properly resolved at summary judgment, which has not yet occurred in this case. The Court finds that there has been no improper delay on the part of Ford or the ABPA, and that there are no practical problems that make trial easy, expeditious, and inexpensive in either forum.  This factor is neutral.

## CONCLUSION

Public interest factor 2 – the local interest in having the case tried in Michigan – weighs in favor of transfer, while the remaining public interest factors are neutral.  Private interest factor 1 – the ease of access to sources of proof - weighs in favor of transfer, and factor 3 – the cost of attendance for willing witnesses – weighs slightly in favor of transfer.  Private interest factor 2 – the availability of compulsory process – weighs against transfer, and the remaining factor is neutral.

Ford has met its burden to demonstrate that the Eastern District of Michigan is clearly more convenient than the current forum for this litigation.  The Eastern District of Texas has little connection with the present litigation, aside from a few potential customers who may or may not reside here, and whose testimony may or may not be relevant to the present case.  On

the other hand, the Eastern District of Michigan has a clear connection to the litigation as the principal place of business of Ford, the location where most of Ford's witnesses work and reside, the location of the majority of the documents relevant to this litigation, and the location where a large local interest in the outcome of this litigation is based.  Transfer of this case to the Eastern District of Michigan will present no practical or case management problems, as this case is in its early stages.

Based on the foregoing, the Court finds that Defendant Ford Global Technologies, LLC's Motion to Transfer Venue to the Eastern District of Michigan (Dkt. #37) is hereby **GRANTED**. The Clerk is directed to transfer this case to the United States District Court for the Eastern District of Michigan.

**SIGNED this 7th day of January, 2015.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE